## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FLORENCIA CARDOZA<br>310 Flanders Netcong Rd.<br>Mt. Olive, NJ 07836<br><br>    Plaintiff,<br><br>v.<br><br>ZUFALL HEALTH CENTER, INC.<br>18 West Blackwell Street<br>Dover, NJ 07801<br><br>    Defendant. | CIVIL ACTION<br><br>No.:_____<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### I. INTRODUCTION

1. This action has been initiated by Florencia Cardoza (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Zufall Health Center, Inc. (*hereinafter* referred to as "Defendant") for violations of Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et seq.*), the Family and Medical Leave Act ("FMLA - 29 U.S.C. §2601 *et seq.*), and the New Jersey Law Against Discrimination ("NJ LAD"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### II. JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice,

satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the District of New Jersey.

### III.    PARTIES

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult individual, with an address as set forth in the caption.

7.      Defendant Zufall Health Center, Inc. is a community health center providing medical and dental services at various locations throughout New Jersey, including the location at which Plaintiff worked in Dover, New Jersey.

8.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

### IV.    FACTUAL BACKGROUND

9.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.     Plaintiff was hired to work for Defendant on or about August 17, 2012.

11. Plaintiff was originally hired as a Certified Medical Assistant ("CMA") at Defendant's Dover, NJ location.

12. As a CMA, Plaintiff's job duties consisted of triaging patients and giving vaccines to children.

13. In or about the fall of 2017, Plaintiff was asked by Defendant's management to help monitor temperatures on refrigerators designated and used to store vaccines at Defendant's Dover, NJ facility, as the individual who was performing this function previously separated from Defendant.

14. Therefore, in addition to her other duties as a CMA, Plaintiff assumed the additional duty of monitoring temperatures of vaccine-designated refrigerators as a favor to Defendant's management in their time of need. Plaintiff continued this job function up and until the time of her termination (even though she was lead to believe that it would not be a permanent job function of hers).

15. Plaintiff often expressed her concerns that monitoring vaccine temperatures was a full-time job, which made it difficult for Plaintiff to perform her other full-time job as a CMA. However, despite these difficulties (and no raise in pay to account for her new extra job functions), Plaintiff continued to perform her job well with Defendant.

16. In the facility at which Plaintiff worked, there were four (4) refrigerators and three (3) freezers that stored various vaccines.

17. Each refrigerator at Defendant designated to store vaccines was supposed to be registered with the State of New Jersey; however, there was one particular refrigerator that was not.

18. Furthermore, each refrigerator designated to store vaccines was also supposed to be registered with IT and have a data logger devise connected to it; however, the same refrigerator that was not registered with the State of New Jersey (discussed *supra*) was also not registered with IT and did not have a data logger devise connected to it.

19. For every vaccine refrigerator at Defendant that was registered with IT, Plaintiff would receive a notification on her phone if any temperatures on said refrigerators were out of range.

20. Furthermore, for every vaccine refrigerator that had a data logger devise connected to it, the data logger would again alert Plaintiff if any temperatures were out of range.

21. Therefore, when Plaintiff was asked to assume the duty of monitoring temperatures for the vaccine-designated refrigerators, she would check each refrigerator by either looking at her phone (where the temperature was registered through the IT system) or she would check the data logger. Plaintiff would then log the temperatures on the computer with the State of New Jersey.

22. Because the one refrigerator at Defendant's facility was (1) not registered with the State of New Jersey; (2) not registered with IT; and (3) did not have a data logger device connected to it, Plaintiff was required to insert a USB into a separate device connected to the refrigerator every Monday and then insert the USB into the computer where all the temperatures for the week would be uploaded to the computer. However, Plaintiff was unable to log the temperatures with the State of New Jersey (because the refrigerator was not properly registered) and when uploading the temperatures from the USB to the computer, it would not alert Plaintiff if any of the temperatures were out of range (like it would if the refrigerator was registered with IT or was connected to a data logger device).

23. In addition to Plaintiff, there were two other individuals who are responsible for monitoring adult vaccines (which were stored in the aforesaid refrigerator that was not registered with the State of New Jersey), including Defendant's PCMH coordinator, Maya Soto.

24. Plaintiff had complained to Defendant's management on several occasions in advance of her termination regarding compliance, health, and safety issues surrounding some of Defendant's refrigerators used to store adult vaccines, including but not limited reporting that one of the refrigerators was (1) not in compliance with what was required by the State of New Jersey, as it was a domestic refrigerator (which should not be used for the storage of vaccines); (2) not registered with the State of New Jersey (and therefore the temperatures were not being properly logged); (3) not registered with IT and therefore not connected to the electronic system that would alert someone like Plaintiff when temperatures were out of range; and (4) did not have a data logger device connected to it, which also would alert someone like Plaintiff when temperatures were out of range.

25. Plaintiff's aforesaid concerns were ignored and Defendant continued to store adult vaccines in a non-compliant refrigerator that was not properly equipped to store adult vaccines or detect when temperatures of the vaccine-designated refrigerators were out of range.

26. Towards the end of Plaintiff's employment with Defendant, she began to suffer from health conditions related to her shoulder, including but not limited to a tear in her rotator cuff, which (at times) limited Plaintiff's ability to perform some daily life activities, including but not limited to lifting, pushing, pulling, and performing manual tasks.

27. As a result of her aforesaid shoulder condition, Plaintiff was required to undergo surgery.

28. Therefore, in or about July of 2018, Plaintiff informed Michelle Underhill (*hereinafter* "Underhill") in Defendant's Human Resources department that she was scheduled to undergo surgery for her aforesaid shoulder condition on or about September 17, 2018.

29. Plaintiff further informed Underhill in August of 2018 that she would need a block medical leave and requested medical leave paperwork for same.

30. In or about mid-August of 2017, Plaintiff was called into a meeting with Rina Ramirez (Chief Medical Officer – *hereinafter* "Ramirez"), Kathleen Felazzola (Director of Nursing), and Maya Soto (PCHM Care Coordinator).

31. During her meeting with Ramirez, Felazzola and Soto, it was discussed that there had been an "excursion" in early August, 2018 (i.e. when the temperatures of a refrigerator storing vaccines goes out of range). The refrigerator that was the subject of the excursion was the same refrigerator that Plaintiff had made multiple complaints about in the past.

32. Plaintiff was questioned by Ramirez about what happened and why the temperatures were not reported as being out of range. At that point in time, Soto interrupted and informed both Ramirez and Felazzola that it was her fault, as she was responsible for overseeing all adult vaccines.

33. Ramirez and Felazzola informed Soto and Plaintiff to find out how many vaccines were in the subject refrigerator and to call the pharmaceutical companies to determine if the vaccines were still viable.

34. Ramirez admitted during the aforesaid August, 2018 meeting that the refrigerator at issue was not even supposed to be in use - which is what Plaintiff had specifically complained about previously but was dismissed by Defendant's management.

35. Towards the end of her meeting with Ramirez, Felazzola and Soto (discussed *supra*), Soto left the meeting when the discussion about the excursion had ceased. At that point, Plaintiff informed both Ramirez and Felazzola that she was scheduled to commence a six-week medical leave on or about September 17, 2018 to undergo shoulder surgery and would need coverage while she out of work.

36. At no point in time during the aforesaid August, 2018 meeting with Ramirez Felazzola, and Soto was Plaintiff ever informed that she was being (or would be) investigated, disciplined, or terminated for the excursion that had occurred earlier in the month – discussed *supra*.

37. Less than one week after her meeting with Defendant (wherein she informed Defendant's management that she was scheduled to commence a medical leave of absence to undergo surgery related to her disability), Plaintiff was informed that she was being terminated from her employment with Defendant for not properly reporting/documenting the aforesaid excursion.

38. Upon information and belief, Soto is still employed with Defendant despite having admitted fault for the aforesaid excursion and despite the fact that she was responsible for all adult vaccines (the only vaccines subject to the excursion).

39. Soto was not noticeably disabled and upon information and belief did not have a medical leave scheduled in the near future.

40. Upon information and belief, there were other employees who did not properly documented vital information but were not terminated like Plaintiff. Upon further information and belief, these individuals were not noticeably disabled, had not requested medical leaves in

7

the near future, and/or who had not complained of wrongdoing or waste in advance of their termination that

## Count I
### Violations of the Family and Medical Leave Act ("FMLA")
### (Retaliation & Interference)

41. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

43. Plaintiff requested leave for her own serious health condition from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

44. Plaintiff had at least 1,250 hours of service with Defendant during her last full year of employment.

45. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

46. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

47. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate her; and/or (3) terminating Plaintiff in order to prevent her from taking FMLA-qualifying leave in the near future.

48. These actions as aforesaid constitute violations of the FMLA.

## Count II
## Violations of the New Jersey Law Against Discrimination ("NJ LAD")
### (Actual/Perceived/Record of Disability Discrimination & Retaliation)

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities including, but not limited to, lifting, pushing, pulling, and performing manual tasks.

51. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant.

52. Plaintiff requested reasonable accommodations from Defendant, including but not limited to a medical leave of absence to undergo surgery related to her aforesaid health condition.

53. Plaintiff was terminated from Defendant shortly after requesting a medical accommodation for her aforesaid health condition.

54. Therefore, Plaintiff believes and avers that she was terminated from Defendant because of: (1) her known and/or perceived health problems; (2) her record of impairment; and/or (3) in retaliation for her requested accommodations.

55. These actions as aforesaid constitute violations of the NJ LAD.

## Count IV
## Violations of the Conscientious Employee Protection Act ("CEPA")
### N.J.S.A. 34:19-1 *et. seq.*
### (Retaliation)

56. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57. Plaintiff was terminated for objecting to and for reporting actions by Defendant she reasonably believed to be wrongdoing, waste, and/or illegal.

58. These actions as outlined throughout this Complaint constitute violations of CEPA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting religious discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, and benefits.

C. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions;

D. Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

E. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F. Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law; and

G. Plaintiff is to receive a trial by jury.

                          Respectfully submitted,

                          **KARPF, KARPF & CERUTTI, P.C.**

                By: _____
                         Ari R. Karpf, Esq.
                         3331 Street Road
                         Two Greenwood Square
                         Suite 128
                         Bensalem, PA 19020
                         (215) 639-0801

Dated: December 27, 2018